# In the United States Court of Federal Claims

No. 13-361 C

(Filed July 24, 2013)[1]

```
* * * * * * * * * * * * * *    *
EXCEL MANUFACTURING, LTD.,     *
                               *
        Plaintiff,             *
                               *
    v.                         *   Post-Award Bid Protest;
                               *   Standing; Limitations on
THE UNITED STATES,             *   Subcontracting Clause, 48
                               *   C.F.R. § 52.219-14 (2012).
        Defendant,             *
                               *
TENNIER INDUSTRIES, INC.,      *
                               *
        Intervenor-Defendant.  *
                               *
* * * * * * * * * * * * * *
```

*Marc Lamer*, Philadelphia, PA, for plaintiff.

*Seth W. Greene*, United States Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Donald E. Kinner*, Assistant Director, Washington, DC, for defendant. *Allison Colsey Eck*, Defense Logistics Agency-Troop Support, Philadelphia, PA, of counsel.

*Ruth E. Ganister*, West Chester, PA, for intervenor-defendant.

---

[1]/ This opinion was issued under seal on July 12, 2013. Pursuant to ¶ 5 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

_____

**OPINION AND ORDER**
_____

**Bush**, *Judge*.

Plaintiff Excel Manufacturing, Ltd. (Excel) filed its bid protest complaint on May 29, 2013.  Excel challenges a contract award by the Defense Logistics Agency-Troop Support (DLATS) to Tennier Industries, Inc. (Tennier) under Solicitation No. SPM1C1-09-R-0010.  The contract is for the supply of cold weather parkas and trousers to the United States military.  In this protest, Excel seeks a permanent injunction and declaratory relief, on the grounds that Tennier's proposal clearly showed on its face that Tennier would not conform to the limitations on subcontracting clause included in the contract.

The administrative record (AR) of this procurement was filed on June 4, 2013.  Briefing was filed according to an expedited schedule.  Oral argument was neither requested by the parties nor deemed necessary by the court.  As discussed below, the award to Tennier has not been shown to be arbitrary, capricious or contrary to law.  Defendant's and intervenor-defendant's motions for judgment on the administrative record are therefore granted,[2] and plaintiff's motion for judgment on the administrative record is denied.

**BACKGROUND**

**I.      Contract Award**

Although the parties present the facts of this procurement in various narratives, there is no serious dispute as to the circumstances of the agency's award decision.  The solicitation, issued on June 16, 2009, sought parkas and trousers through "an indefinite delivery indefinite quantity, firm fixed-priced contract for a one-year base period, followed by two one-year option periods." Def.'s Mot. at 2.

_____

[2] Tennier included with its motion for judgment on the administrative record a motion to dismiss the complaint for lack of standing; as explained below, the motion to dismiss is denied.

2

Thirteen offers were received, although nine of those offers were rejected based, at least in part, on unsatisfactory product samples. AR at 423, 452. Of the remaining four proposals, Tennier's proposal offered the lowest price, and Excel's price was the next lowest. *Id.* at 442. The specific evaluation ratings of proposals and the reasoning underlying the agency's best value award decision are not challenged in this bid protest. The contract was awarded to Tennier on March 5, 2013.

## II.    Relevant Solicitation Clauses

Plaintiff's challenge to the award addresses a particular contract clause referenced in the solicitation, titled "Limitations on Subcontracting." AR at 40. The relevant text of Federal Aquisition Regulation (FAR) 52.219-14, 48 C.F.R. § 52.219-14 (2012) provides as follows:

> *Supplies (other than procurement from a nonmanufacturer of such supplies).* The concern shall perform work for at least 50 percent of the cost of manufacturing the supplies, not including the cost of materials.

48 C.F.R. § 52.219-14(c)(2) (formerly found at 48 C.F.R. § 52.219-14(b)(2)). An alleged conflict between the terms of Tennier's proposal and the limitations on subcontracting clause is the sole protest ground raised by plaintiff.

The only other issue in dispute in this case, raised by intervenor-defendant, is the question of plaintiff's standing to bring this protest. Tennier's challenge to Excel's standing addresses a different clause included in the solicitation, Defense Logistics Agency Directive (DLAD) 52.209-9005, titled "Identification of Sources for All Components for Clothing/Textile Items." AR at 61. The relevant text of DLAD 52.209-9005 is reproduced here:

> (a) The offeror shall indicate below the names and addresses of those suppliers from whom each component will be obtained for use in the performance of any resultant contract. In addition, for each component, the offeror shall also identify the name of the item's

3

> manufacturer and the address of the manufacturing
> location.  Failure to furnish this information with the
> offer may result in rejection of the offer.
>
> (b) No change in the supplier(s) or manufacturer(s) listed
> below shall be permitted between the opening/closing
> date of the offer and the award, except where time
> permits and then only upon receipt of the contracting
> officer's written approval.
>
> (c) Any change in the supplier(s) or manufacturer(s)
> listed below, and in any resultant contract, is
> prohibited unless it is specifically approved in
> advance by the contracting officer.

AR at 61.  Below this clause in the solicitation are column headings where the
offeror, for each component, would identify the quantity of that item to be
obtained, along with the name and address of the supplier, and the address of the
manufacturer.  It is undisputed that Tennier provided this information in its
proposal and that Excel did not.  *Id.* at 180-82, 233.

## III.   Protest History

Excel protested the award to Tennier at the Government Accountability
Office (GAO) on March 18, 2013.  After briefing had begun on the GAO protest,
Excel filed its protest in this court on May 29, 2013.  On the same day, Excel
withdrew its GAO protest and the GAO closed the protest file with no further
action.  The protest before this court was expedited with the agreement of the
parties so that the agency would suffer no needless interruption in the delivery of
parkas and trousers to the military.

## DISCUSSION

## I.   Bid Protest Jurisdiction

This court "shall have jurisdiction to render judgment on an action by an

interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2006).  The jurisdictional grant is "without regard to whether suit is instituted before or after the contract is awarded." *Id.*  As a threshold jurisdictional matter, however, the plaintiff in a bid protest must show that it has standing to bring the suit.  *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (*ITAC*); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citation omitted).

## II.      Standard of Review for Judgment on the Administrative Record

Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record.  To review a motion, or cross-motions, under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005).  The court must make factual findings where necessary.  *Id.*  The resolution of RCFC 52.1(c) cross-motions is akin to an expedited trial on the paper record.  *Id.*

## III.     Bid Protest Review

First, the plaintiff in a bid protest must show that it has standing to bring the suit.  *ITAC*, 316 F.3d at 1319.  This may be accomplished by demonstrating that the plaintiff was an actual bidder and that it was prejudiced by the award to the successful offeror.  *Id.* (citing *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)).  Prejudice is proven by establishing that the plaintiff had a substantial chance of receiving the contract, but for the alleged procurement error.  *Id.* (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if

it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure. *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts*, 216 F.3d at 1058.

*De minimis* errors in the procurement process do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing *Andersen Consulting v. United States*, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)). The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question. *Id.* (citing *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed. Cir. 1988)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).  If, on the other hand, "the trial court determines [that] the government acted without rational basis or contrary to law when evaluating the

bids and awarding the contract[,] . . . it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351. Plaintiff again bears the burden of proof. *Id.* at 1358. "Prejudice is a question of fact." *Id.* at 1353 (citing *Advanced Data Concepts*, 216 F.3d at 1057).

## IV.   Standing

Before addressing any aspect of plaintiff Excel's bid protest, the court must first examine intervenor-defendant Tennier's assertion that Excel lacks standing to bring a protest in the first instance. In that regard, Tennier argues that Excel's bid was non-responsive to the solicitation because sources for clothing components were not identified. Tennier Mot. at 11 ("Plaintiff's offer was clearly non-responsive to the terms of the Solicitation."). In essence, intervenor-defendant argues that Excel's failure to furnish the information required by DLAD 52.209-9005 rendered Excel's proposal ineligible for award, and also denies Excel the interested party status which provides standing to bring a bid protest before this court. The court notes, at the outset, that the administrative record is devoid of any indication that the agency considered Excel's proposal ineligible for award. Both the government and Excel disagree with Tennier's standing argument.

As a threshold issue, the parties dispute whether "non-responsiveness" is a concept applicable to negotiated procurements such as the one at issue in this case. Defendant contends, for example, that "'[t]he FAR confines the concept of responsiveness to sealed bidding' under Part 14." Def.'s Reply at 4 (quoting *Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 468 (2008)). Perhaps in recognition of this authority, intervenor-defendant frames its challenge more broadly in its reply brief:

> We submit that it matters not whether one considers the failure of an offeror under a negotiated procurement to comply with mandatory requirements of a solicitation to be labeled as non-responsive or as a failure to comply with such material terms, the fact remains that if an offeror simply refuses to comply with mandatory provisions of a solicitation and if the agency chooses not to engage in discussions or negotiations to permit the

> offeror to complete its offer, the offer is incomplete,
> non-compliant and should not be eligible for award.

Tennier Reply at 6 (citing *Dismas Charities, Inc. v. United States*, 75 Fed. Cl. 59 (2007)).  The court need not try to resolve any inconsistencies in the precedent discussing "responsiveness" cited by the parties – it is clear that Tennier challenges Excel's standing on the basis that Excel's proposal was ineligible for award, an argument which is not foreclosed by precedent or the FAR.[3]  *See, e.g.*, *Int'l Mgmt. Servs., Inc. v. United States*, 80 Fed. Cl. 1, 6-7 (2007) (dismissing a bid protest for lack of standing because the plaintiff was not eligible to compete for the small business set-aside contract at issue in that case).

In the court's view, however, intervenor-defendant's argument that the component sources list was a mandatory or material solicitation requirement, so that failure to provide this list rendered Excel's proposal ineligible for award, is not persuasive.  The court has found no authority, and Tennier has cited none, which states that failure to provide the information requested in DLAD 52.209-9005 renders a bid ineligible for award.  Tennier relies heavily on a GAO decision, *Dubicki & Clarke, Inc.*, B-190540, 78-1 CPD ¶ 132, 1978 WL 10239 (Comp. Gen. Feb. 15, 1978), for its standing argument.  Tennier Mot. at 12-13; Tennier Reply at 7.  In intervenor-defendant's view, *Dubicki* provides a test for determining whether a solicitation clause is mandatory to the extent that failure to provide the requested information renders a proposal ineligible for award.  Tennier Mot. at 12-13.

As defendant notes, Tennier "incorrectly relies" on *Dubicki*.  Def.'s Reply at

---

[3]/  The court notes that while "responsiveness" and "non-responsiveness" are terms used by the FAR with respect to sealed bids, and non-responsive bids are subject to rejection pursuant to FAR 14.301, 48 C.F.R. § 14.301 (2012), and FAR 14.404-2, 48 C.F.R. § 14.404-2 (2012), the elimination of proposals which fail to conform to material requirements of a solicitation is likewise sanctioned by the FAR in negotiated procurements.  *See, e.g.*, FAR 15.503(a)(1), 48 C.F.R. § 15.503(a)(1) (2012); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996) ("'In negotiated procurements, a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations.'") (citations omitted); *Tin Mills Props., LLC v. United States*, 82 Fed. Cl. 584, 591 (2008) (noting, in that bid protest, that the protestor's "offer could be excluded from the competitive range because it materially departed from the solicitation requirements").

5.  The "test" cited by intervenor-defendant is actually a series of contentions by the protestor that the *Dubicki* decision largely rejected in denying the protest.  *See Dubicki*, 1978 WL 10239, at *3 (reviewing the citations and multi-part test proffered by the protestor, and stating that those prior protests were largely sustained, instead, because the solicitation clauses in question explicitly stated that "failure to properly complete the requirement would result in rejection of the bid as nonresponsive").  Here, the solicitation clause relied upon by intervenor-defendant indicated that failure to supply a component sources list "may" result in the proposal's rejection.  AR at 61.  The court finds *Dubicki*, to the extent it provides any persuasive analysis,[4] to be more supportive of plaintiff's standing than of Tennier's challenge to Excel's standing.  *See* 1978 WL 10239, at *5 (finding the solicitation clause at issue in that protest, which did not compel automatic rejection of the bid as non-responsive if the information requested was not supplied, to address responsibility, not eligibility); *see also Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 97 Fed. Cl. 96, 144 n.71 (2010) (noting that "[u]se of the permissive term 'may' connotes discretion [and indicated, in that case, that the] solicitation did not require that the [government] reject an offeror's proposal based upon a failure to submit [a particular] certificate") (citation omitted).

Aside from *Dubicki*, intervenor-defendant offers no authority for its contention that failure to include the information required by DLAD 52.209-9005 rendered Excel's bid ineligible for award.  The government persuasively argues that DLAD 52.209-9005 addresses contractor qualifications and responsibility, and that missing component source information, rather than rendering Excel's proposal ineligible, could "be provided to the agency at any time before contract award." Def.'s Reply at 5.  Defendant references DLAD Part 9 and FAR Part 9, and contends that these authorities show that DLAD "52.209-9005 . . . relates to the responsibility of proposed suppliers and subcontractors." *Id.*  It is well-established that responsibility criteria are not criteria which would render a proposal ineligible for award in a negotiated procurement.  *See, e.g., Centech Group, Inc. v. United*

---

[4] *Dubicki* concerns a different proposal listing requirement than the one set forth in DLAD 52.209-9005, cites to FAR provisions that are no longer current, and itself has not been cited for over twenty years.  For these reasons, even *Dubicki*'s persuasive authority in this bid protest is limited.

*States*, 554 F.3d 1029, 1034 n.2 (Fed. Cir. 2009) ("Responsibility refers to an offeror's apparent ability and capacity to perform all contract requirements and is determined, not at proposal opening, but at any time prior to award of the contract based on any information received by the agency up to that time.") (citation omitted); *Noslot Cleaning Servs., Inc.*, B-228538, 88-1 CPD ¶ 58, 1988 WL 226934, at *3 (Comp. Gen. Jan. 21, 1988) (distinguishing between criteria which might render a proposal ineligible for award, and responsibility criteria which can be satisfied at any time up until award).  The court concludes that Excel's failure to comply with DLAD 52.209-9005 was a matter of responsibility, not eligibility for award.

Finally, Tennier argues that "Berry Amendment" requirements for domestically manufactured components are implicated when an offeror does not comply with DLAD 52.209-9005, because failure to list sources for components frustrates an agency's ability to enforce the requirements of that statutory provision.  Tennier Mot. at 11-12, 14 (citing 10 U.S.C. § 2533a (2006)).  "The Berry Amendment generally restricts the Department of Defense's expenditure of funds for certain articles (including 'clothing') to domestically produced products." *Integrity Supply*, B-406860, 2012 CPD ¶ 256, 2012 WL 3893612, at *1 (Comp. Gen. Sept. 10, 2012) (citing 10 U.S.C. § 2533a(b)).  Intervenor-defendant contends that the Berry Amendment requirements referenced in the solicitation further support its view that Excel's proposal was rendered ineligible by its failure to include component source information.

The court does not consider the Berry Amendment requirements referenced in the solicitation to alter the nature of DLAD 52.209-9005, a responsibility requirement.  If Excel had been selected for contract award, the requirements of DLAD 52.209-9005, as they impact the Berry Amendment, could have been satisfied by the provision of additional component source information by Excel.  Furthermore, as defendant notes, Excel's proposal included a reference to Berry Amendment requirements and stated that Excel's product samples complied with those requirements.  AR at 326.  Excel's proposal, on this record, did not evidence any violation of or an intent to violate Berry Amendment requirements.

The court agrees with defendant that "the record demonstrates that the evaluators correctly determined that Excel met all the [evaluation] factors and

subfactors in Section M of the Solicitation." Def.'s Reply at 4. For all of the above-stated reasons, the court concludes that Excel's proposal was eligible for award. But for the agency's alleged error in accepting Tennier's proposal, Excel had a substantial chance of being awarded the contract. The court concludes that Excel is an interested party and has standing to bring this suit.

## V. Analysis of the Merits of Excel's Protest

### A. Supplementation of the Administrative Record

As a threshold issue, plaintiff and Tennier rely upon affidavits or declarations to support their arguments on the merits of this bid protest. Plaintiff relies on the declaration of Joel Ortega, Excel's project manager, filed at the outset of this litigation; Tennier relies on the affidavit of Steven Eisen, its chief financial officer, attached to Tennier's motion for judgment on the administrative record. These documents present statements of fact regarding various aspects of Tennier's costs of manufacturing the parkas and trousers.

According to *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). Here, plaintiff's entire case is framed as an inquiry into whether the agency should have doubted whether Tennier's costs of manufacturing would exceed Tennier's subcontractors' costs of manufacturing. Both documents are necessary to an effective review of the parties' arguments regarding Tennier's costs of manufacturing the parkas and trousers. For this reason, supplementation of the administrative record with these two documents is deemed warranted and will be permitted by the court.

### B. The Proper Analytical Framework for Compliance with a Limitations on Subcontracting Clause

#### 1. Formula for Measuring Compliance with the Limitations on Subcontracting Requirement

11

Where applicable to contracts for supplies, the text of FAR 52.219-14(c)(2) requires that a contractor "shall perform work for at least 50 percent of the cost of manufacturing the supplies [provided the government], not including the cost of materials." 48 C.F.R. § 52.219-14(c)(2). What is obvious from this regulatory text is that the cost of materials is not included in the comparison of the *cost of the work performed by the contractor* to the *overall cost of manufacturing of the finished product*, in this case parkas and trousers. What is less obvious from the text of this regulation, however, is the formula which should be used to determine compliance with the requirement. The parties vigorously dispute the issue; unfortunately for plaintiff, the only persuasive authority on this issue favors the government's and Tennier's position.

The GAO has adopted the following formula for determining whether a contractor is in compliance with the limitations on subcontracting clause in FAR 52.219-14(c)(2):

> [T]he total contract cost (including profit) less materials and subcontracting costs is to be compared with all subcontracting costs less the subcontractor's materials costs.

*Mech. Equip. Co.*, B-292789.2, 2004 CPD ¶ 192, 2003 WL 23782511, at *18 (Comp. Gen. Dec. 15, 2003) (*Mechanical Equipment*) (citing *Marwais Steel Co.*, SBA No. 3884 (Feb. 10, 1994); *Phoenix Sys. & Techs., Inc.*, SBA No. 3220 (Nov. 29, 1989) (*Phoenix Systems*)). Furthermore, the contractor's total costs figure should include overhead costs, general and administrative (G & A) costs and profit. *Id.* (citing *Phoenix Systems*). Thus, although the text of FAR 52.219-14(c)(2) might be assumed to require a simple comparison of the labor costs of the prime contractor and the labor costs of all of its subcontractors, both the GAO and the Small Business Administration (SBA) have found that a more comprehensive formula is required to determine compliance with this regulation. *Id.*

Plaintiff attempts to rebut *Mechanical Equipment* and *Phoenix Systems* by reference to various accounting standards set forth in the FAR or developed by the Financial Accounting Standards Board (FASB). Pl.'s Mot. at 11-13. None of plaintiff's arguments are supported by caselaw, decisions of the GAO, or decisions

of the SBA.  The general accounting principles cited by plaintiff are less pertinent to this case than the decisions of the GAO and the SBA which have specifically addressed compliance with FAR 52.219-14(c)(2).  The court recognizes the GAO's expertise in this area and defers to its interpretation of FAR 52.219-14(c)(2).  *See, e.g.*, *Centech*, 554 F.3d at 1038 n.4 ("While not binding authority on this court, the decisions of the Comptroller General are instructive in the area of bid protests." (citing *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1355-56 (Fed. Cir. 2008); *Planning Research Corp. v. United States*, 971 F.2d 736, 740 (Fed. Cir. 1992))).  Thus, in this case, the court holds that *Mechanical Equipment* and *Phoenix Systems* provide the proper formula to test a contractor's compliance with the limitations on subcontracting clause.

### 2.    Review of an Agency's Acceptance of a Proposal Where the Limitations on Subcontracting Clause Applies

The court now turns to a separate issue, an agency's acceptance of a proposal and its representations as to subcontracting.  The parties present a variety of articulations of the analytical framework for the review of an agency's acceptance of a proposal which may or may not indicate, on its face, that the awardee will comply with the limitations on subcontracting clause.  Plaintiff, in its response brief, suggests that the proposal must clearly show on its face that the contractor will comply with this requirement:

> The issue in this situation is not whether Tennier took exception to the Limitations on Subcontracting clause or otherwise indicated that it would *not* comply.  The issue is whether Tennier clear[ly] showed that it *would* comply.

Pl.'s Resp. at 3 (citing *Carson Helicopter Servs., Inc.*, B-299720, 2007 CPD ¶ 142, 2007 WL 2325299 (Comp. Gen. July 30, 2007); *Mine Safety Appliances Co.*, B-247919, 92-2 CPD ¶ 150, 1992 WL 224484 (Comp. Gen. Sept. 3, 1992)).  Neither of these GAO decisions cited by plaintiff in its response brief, however, addresses the requirements of the limitations on subcontracting clause at issue in this case.  The court is not persuaded that the particular analytical framework presented in plaintiff's response brief captures the essence of the inquiry required

here.

Defendant, relying on an excerpt from a passage in *Centech* where the Federal Circuit was quoting language in a GAO decision, argues in its reply brief that "'[t]he issue here does not concern whether [Tennier] can or will comply with the subcontracting limitation requirement . . . but rather, whether [Tennier] has specifically taken exception to the subcontracting limitation requirement on the face of its . . . proposal.'"  Def.'s Reply at 2 (quoting *Centech*, 554 F.3d at 1034-35) (alteration in original).  Although the passage is accurately quoted, it is not part of the holding in *Centech* – this particular passage is only presented as part of the history of the appeal then before the Federal Circuit.  The court must therefore reject the analytical framework cited in defendant's reply brief, as well.

The proper analytical framework for the review of an agency's decision to accept a proposal (and its representations as to subcontracting that will comply with FAR 52.219-14) is succinctly provided by a different statement in  *Centech*:

> [A] proposal that, on its face, leads "an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation" is technically unacceptable and "may not form the basis for an award."

554 F.3d at 1038 (quoting *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 527 (2005)).  This approach is echoed in a number of GAO decisions, one of which was cited by plaintiff.  *See* Pl.'s Mot. at 6-7 (citing *Global Assocs. Ltd.*, B-271693, 96-2 CPD ¶ 100, 1996 WL 509228 (Comp. Gen. Aug. 2, 1996)).  In that decision, the GAO stated that

> the protest allegation here challenges the agency's determination that [the awardee's] proposal was acceptable, and is based upon the representations in the proposal . . .  as to whether the proposal complied with the subcontracting limitation.  Protests such as this, which are directed at the awardee's proposal, challenge the *reasonableness* of the agency's determination of technical acceptability . . . .

*Global Associates*, 1996 WL 509228, at *4 (citations omitted and emphasis added). Thus, the court reviews the reasonableness, or rationality, of the agency's acceptance of the proposal (and its representations as to subcontracting), in light of the requirements set forth in FAR 52.219-14.

In other words, unless a proposal "leads" the agency to question the awardee's subcontracting of contract work as a possible violation of the limitations on subcontracting clause, it is generally reasonable for the agency to accept the proposal and determine compliance with that clause after the award decision has been made:

> As a general rule, an agency's judgment as to whether a small business offeror will comply with the subcontracting limitation is a matter of responsibility, and the contractor's actual compliance with the provision is a matter of contract administration. *Orincon Corp.*, B-276704, July 18, 1997, 97-2 CPD ¶ 26 at 4.  However, where a proposal, on its face, should *lead* an agency to the conclusion that an offeror could not and would not comply with the subcontracting limitation, we have considered this to be a matter of the proposal's technical acceptability; a proposal that fails to conform to a material term or condition of the solicitation such as the subcontracting limitation is unacceptable and may not form the basis for an award.  *Coffman Specialties, Inc.*, B-284546, B-284546.2, May 10, 2000, 2000 CPD ¶ 77 at 5.

*KIRA Inc.*, B-287573.4, 2001 CPD ¶ 153, 2001 WL 1073392, at *3 (Comp. Gen. Aug. 29, 2001) (emphasis added).

Following *Centech*, *Global Associates* and *KIRA*, this court must determine whether Tennier's proposal, on its face, should have led the agency to conclude that Tennier would not comply with the limitations on subcontracting clause.  If Tennier's proposal was facially infirm in this regard, and the agency did not confirm that Tennier would comply with FAR 52.219-14, the award decision

challenged here was not rational and cannot stand.  If, on the other hand, Tennier's proposal would not have led the agency to doubt the awardee's compliance with FAR 52.219-14, Excel's protest must fail.

### C.   Was Tennier's Proposal Facially Compliant with the Limitations on Subcontracting Clause?

Plaintiff contends that Tennier's subcontractors will perform more than 50 percent of the work of manufacturing the parkas and trousers for the awarded contract.  More importantly for this bid protest, plaintiff argues that Tennier's proposal should have led the agency to question whether Tennier would comply with the limitations on subcontracting clause:

> Tennier's proposal, wherein it listed five (5) subcontractors, including three (3) . . . who would be performing all of the sewing operations, should have caused DLATS to at least inquire to verify that Tennier would be incurring 50% of the cost of manufacturing the Parkas and Trousers (not including materials) . . . .

Pl.'s Mot. at 9.  Plaintiff relies on the Ortega declaration for a breakdown of manufacturing labor costs, and states that "Excel calculated the labor being provided by Tennier versus the labor being provided by [Tennier's] subcontractors."  *Id.* at 10.  According to plaintiff, "Tennier will only be performing 47.61% of the work (not including the cost of materials), while its subcontractors will be performing 52.29%."  *Id.*  In plaintiff's view, the information Tennier provided in its proposal regarding its subcontracting of various manufacturing processes should have led the agency to inquire as to Tennier's willingness to comply with FAR 52.219-14.

The court cannot agree for a number of reasons.  First, the proposal Tennier provided DLATS does not contain a statement that Tennier would not comply with the limitations on subcontracting clause.  Second, the proposal includes a long list of the manufacturing processes which would be performed either by Tennier or by its subcontractors, a list which includes such operations as cutting, quilting, sewing, assembly, finishing, inspecting, packing and shipping.  *See* AR at 178.  It

is certainly not obvious to the average reader, or the court, that this detailed division of tasks proposed by Tennier, with ten listed operations equally divided between the contractor and its roster of subcontractors, should have led the agency to inquire as to Tennier's willingness to comply with FAR 52.219-14.

The government argues that "there is nothing on the face of Tennier's proposal that showed that Tennier was not agreeing to incur by itself 'at least 50 percent of the cost of manufacturing supplies, not including the cost of materials,' as required by the Limitations on Subcontracting clause." Def.'s Mot. at 14-15 (citations omitted). Having reviewed the administrative record, as supplemented by the Ortega declaration and the Eisen affidavit, the court must agree with defendant. Tennier's proposal, on its face, would not lead the agency to conclude that Tennier would not comply with the limitations on subcontracting clause. Furthermore, Excel's calculations of labor costs do not show any significant error on the part of DLATS, as explained below.

Defendant argues that there are at least two problems with plaintiff's contention that Tennier was only committing to perform 47.61% of the contract work. First, Excel's calculations are based on an assumption that Tennier *and* its subcontractors pay their workers the federal minimum wage. Def.'s Mot. at 16; *see also* Pl.'s Mot. at 10. According to intervenor-defendant, "Tennier has many employees who will work under this contract who are paid very significantly in excess of" the minimum wage. Tennier Mot. at 5 n.2; *see also* Eisen Aff. ¶ 12. Thus, at least one of plaintiff's assumptions regarding labor costs appears to be questionable.

Second, and perhaps more importantly, Excel's calculations comparing Tennier's labor costs and the labor costs of its subcontractors are not equivalent to the formula for determining compliance with the limitations on subcontracting clause discussed *supra*. As defendant notes, Excel's calculations do not take into account profit or G & A, which are necessary cost components of the proper formula testing compliance with FAR 52.219-14. Def.'s Mot. at 16-17 (citing *Mechanical Equipment* and *Phoenix Systems*). Because Excel's calculations supporting its allegation that Tennier would not comply with the limitations on subcontracting clause do not contain all of the necessary cost elements, the court cannot rely on Excel's conclusions as accurate.

17

Defendant also notes that none of the cost elements which are necessary for an accurate application of the compliance formula set forth in *Mechanical Equipment* are specified in Tennier's proposal. *Id.* at 17. The government therefore argues that "prior to contract award, there was no such cost information on the face of Tennier's proposal – or any other offeror's proposal, for that matter – to indicate that Tennier would not comply with the subcontracting limitation requirement." *Id.* (citing *Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 755 (2006)). The court agrees with the government that, in the circumstances of this procurement, there was no information on the face of Tennier's proposal which would have led the agency to conclude that Tennier would not comply with FAR 52.219-14.

Intervenor-defendant offers substantially the same arguments as the government. In Tennier's view, Excel's calculations showing Tennier's proposed non-compliance with the limitations on subcontracting clause are "speculative, hypothetical and incorrect [because they have] not adhered to the required standards for interpreting the cost of manufacture provisions of the Limitation[s] on Subcontracting clause." Tennier Mot. at 9. The court cannot disagree. Although the court does not adopt all of intervenor-defendant's legal analyses, in this case "the procuring agency's reliance on the [awardee's] de[ ]facto promise to comply with the provisions of the [limitations on subcontracting] clause was rational." *Id.*

## CONCLUSION

There was nothing on the face of Tennier's proposal which would have led the agency to the conclusion that Tennier would not comply with the limitations on subcontracting clause. DLATS rationally considered Tennier's proposal to be acceptable, and the award to Tennier survives this court's review. Because plaintiff's protest has not succeeded on the merits, the court need not consider whether the factors justifying injunctive relief have been met in this case.

Accordingly, it is hereby **ORDERED** that

(1)     Plaintiff's Motion for Judgment on the Administrative Record, filed June 11, 2013, is **DENIED**;

18

(2)     Defendant's Motion for Judgment on the Administrative Record, filed June 18, 2013, is **GRANTED**;

(3)     Intervenor-defendant Tennier's Motion for Judgment on the Administrative Record, filed June 18, 2013, is **DENIED in part**, as to Tennier's motion to dismiss; and is **GRANTED in part**, as to judgment on the administrative record;

(4)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant and intervernor-defendant, dismissing the complaint with prejudice;

(5)     On or before **August 2, 2013**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter;

(6)     On or before **August 2, 2013**, intervenor-defendant shall **FILE**, as separate **UNSEALED** documents, all redacted versions of its sealed filings that were previously filed as attachments to sealed filings, so as to establish a proper public record of this protest;

(7)     On or before **August 2, 2013**, plaintiff shall **FILE**, as separate **UNSEALED** documents, redacted versions of all sealed filings that were filed on May 29, 2013 for which no redacted versions have been previously submitted, so as to establish a proper public record of this protest;

(8)     On or before **August 2, 2013**, defendant shall **FILE**, as a separate **UNSEALED** document on CD-ROM, a redacted version of the administrative record filed June 4, 2013, so as to establish a proper public record of this protest; and,

(9)     Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge